```
 1                  IN THE UNITED STATES DISTRICT COURT
                  FOR THE NORTHERN DISTRICT OF GEORGIA
 2                          ATLANTA DIVISION

 3   UNITED STATES OF AMERICA        )
                                     )
 4                 Plaintiff,        )    CRIMINAL ACTION FILE
                                     )    NO. 1:06-CR-442-JEC
 5   v.                              )
                                     )    ATLANTA, GEORGIA
 6   MARCUS WATKINS                  )
                                     )
 7                 Defendant.        )
     _____)

 8

 9                   TRANSCRIPT OF PROCEEDINGS
               BEFORE THE HONORABLE JULIE E. CARNES,
10                 UNITED STATES DISTRICT JUDGE

11                    Friday, July 27, 2007

12

13

14

     APPEARANCES OF COUNSEL:
15
     For the Plaintiff:           OFFICE OF THE U.S. ATTORNEY
16                                (By:  Angela Marie Jordan)

17   For the Defendant:           FEDERAL DEFENDER PROGRAM
                                  (By:  Vionnette Reyes Johnson)
18

19

20

21        Proceedings recorded by mechanical stenography
              and computer-aided transcript produced by
22                NICHOLAS A. MARRONE, RMR, CRR
                     1714 U. S. Courthouse
23                   75 Spring Street, S.W.
                      Atlanta, GA  30303
24                      (404) 215-1486

25
```

| | |
|---|---|
| 1 | Friday Afternoon Session |
| 2 | July 27, 2007 |
| 3 | 3:37 p.m. |
| 4 | -- -- -- |
| 5 | P R O C E E D I N G S |
| 6 | -- -- -- |
| 7 | (In open court:) |
| 8 | THE CLERK:  The Court calls the United States of |
| 9 | America v. Marcus Watkins, 06-CR-442. |
| 10 | If the attorneys will please stand and identify |
| 11 | yourselves? |
| 12 | MS. JORDAN:  Good afternoon, Your Honor.  I'm |
| 13 | Angela Jordan.  I represent the United States. |
| 14 | THE COURT:  Good afternoon. |
| 15 | MS. JOHNSON:  Vionnette Johnson representing |
| 16 | Marcus Watkins.  Good afternoon, Judge. |
| 17 | THE COURT:  And good afternoon, Mr. Watkins. |
| 18 | All right.  If you all will come forward. |
| 19 | (The oath is given to the Defendant by the Clerk.) |
| 20 | THE COURT:  All right.  Mr. Watkins, before I can |
| 21 | accept your plea, I have to ask you a lot of questions to |
| 22 | make sure you understand what the consequences of a guilty |
| 23 | plea are. |
| 24 | THE DEFENDANT:  Yes. |
| 25 | THE COURT:  If at any time you aren't clear what it |

1    is I'm saying to you, don't be shy, let me know, and I will

2    do my best to try to explain it better or let you talk to

3    your attorney.  Do you understand?

4            THE DEFENDANT:  Yes.

5            THE COURT:  All right.  You have been sworn to tell

6    the truth, Mr. Watkins.  That means your answers are subject

7    to the penalties of perjury.

8            How old are you, Mr. Watkins?

9            THE DEFENDANT:  36.

10           THE COURT:  And how much education do you have?

11           THE DEFENDANT:  Tenth grade.

12           THE COURT:  Where did you go to high school?

13           THE DEFENDANT:  Price High.

14           THE COURT:  Here in Atlanta?

15           THE DEFENDANT:  Atlanta, yes, ma'am.

16           THE COURT:  You speak and understand English; is

17   that correct?

18           THE DEFENDANT:  Yes, ma'am.

19           THE COURT:  Have you been taking any medicine,

20   pills, drugs, narcotics, anything like that recently?

21           THE DEFENDANT:  No, ma'am.

22           THE COURT:  Have you had any alcohol to drink

23   recently?

24           THE DEFENDANT:  No, ma'am.

25           THE COURT:  Ms. Johnson, do you have any concerns

1    about your client's competence to plead guilty?

2           MS. JOHNSON:  I do not.

3           THE COURT:  Mr. Watkins, I told you there are

4    consequences of pleading guilty, and so let me try to explain

5    to you briefly what rights a person gives up when he or she

6    pleads guilty to an offense.

7           First, under the laws of this country, you have a

8    right to a trial, and that could be a right to a jury trial,

9    if you chose.  And you would have the right to have an

10   attorney appointed to represent you at that trial.

11          Do you understand that by pleading guilty, you are

12   giving up your right to a trial?

13          THE DEFENDANT:  Yes, ma'am.

14          THE COURT:  And to understand what that means, it

15   helps to know what happens at a trial.  So let me tell you

16   briefly what kinds of things happen at a trial if you don't

17   already know.

18          At a trial you would be presumed innocent.  The

19   government would have to prove you guilty beyond a reasonable

20   doubt, and you wouldn't have any obligation to prove

21   anything.

22          The way the government would try to prove you

23   guilty would be to introduce enough evidence to persuade the

24   jury that you were guilty.

25          They might call witnesses.  And if they did, your

1   attorney would have a chance to question those witnesses.

2   Any evidence that the government offered, whether it was

3   witnesses or documents or whatever it was they had, your

4   attorney would have an opportunity to challenge that evidence

5   if she thought there was a legal basis to do that.

6           She would also have a chance to introduce evidence

7   on your behalf if she had any evidence, and she would have a

8   chance to introduce the testimony of witnesses, and could

9   even subpoena witnesses to testify if there was anybody that

10  would be helpful to you.

11          Now, that was a very quick summary of what happens

12  at a trial.  Do you understand that by pleading guilty, you

13  are giving up your rights to all of those things I was just

14  talking about?

15          THE DEFENDANT:  Yes, ma'am.

16          THE COURT:  All right.  And also at a trial you

17  would have the right to testify if you wanted to do

18  that.  You would also have a right to remain silent, if that

19  was your choice.

20          But here in a guilty plea hearing, which is what we

21  are doing, obviously you can't remain silent.  We have been

22  talking, and I will continue to ask you questions, and I will

23  expect that you will answer those.

24          In fact, in a few minutes, I will be asking you

25  what it was that you did that brought you here, and you will

1   need to answer that question.  Do you understand that?

2          THE DEFENDANT:  Yes, ma'am.

3          THE COURT:  If I accept your plea, Mr. Watkins,

4   there will be no more trial, there will be no more hearing on

5   your guilt or innocence, because you are admitting your guilt

6   at least as to the count you are pleading guilty to.

7          Instead the only thing we would have left to do

8   would be to set a sentencing date and impose sentence.  Do

9   you understand that?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Now, having heard all these legal

12   warnings, is it still your wish to enter a plea of guilty to

13   this charge?

14          THE DEFENDANT:  Yes, ma'am.

15          THE COURT:  All right.  Mr. Watkins, now I'm going

16   to -- well, I think first before I ask the government the

17   next question I was going to ask, Ms. Jordan may want you to

18   verify signatures.  Let's get that out of the way.

19          MS. JORDAN:  I'm showing you a document that is

20   entitled Guilty Plea and Plea Agreement for Criminal

21   Indictment No. 1:06-CR-442.

22          Have you had an opportunity to go over this guilty

23   plea agreement with your attorney?

24          THE DEFENDANT:  Yes.

25          MS. JORDAN:  I'm showing you here on page twelve a

1  signature line where it says signature of the defendant.  Is

2  that your signature, Marcus Watkins?

3        THE DEFENDANT:  Yes.

4        MS. JORDAN:  And here on page eleven, again there

5  is a signature line for a signature of the defendant.  Is

6  that your signature?

7        THE DEFENDANT:  Yes.

8        MS. JORDAN:  Is that your evidence that you wish to

9  plead guilty to Count Two of this indictment based on this

10 plea agreement?

11       THE DEFENDANT:  Yes.

12       MS. JORDAN:  And, Ms. Johnson, is this your

13 signature above the line where it says attorney for the

14 defendant?

15       MS. JOHNSON:  Yes, it is.

16       MS. JORDAN:  Your Honor, at this time I tender the

17 guilty plea.

18       THE COURT:  All right.  At this time, Mr. Watkins,

19 I'm going to ask the prosecutor to do two things for us.

20        First, I want her to summarize for all of us what

21 the elements of the offense are that you are pleading guilty

22 to.  Elements means what are the things she would have to

23 prove to prove you or anybody else guilty of such a charge.

24        After she does that, I want her to summarize for

25 all of us the evidence she would introduce against you if we

1    were going to trial.

2           And I want you to listen to that, because I will

3    have to ask you in a few minutes whether she has summarized

4    it accurately or whether there is any correction you might

5    want to make.

6           MS. JORDAN:  Your Honor, if this case were to

7    proceed to trial, the government would have to prove beyond a

8    reasonable doubt that on or about June 5, 2006, during and in

9    relation to a crime of violence, the defendant used,

10   brandished and carried a firearm, and that the crime of

11   violence is the robbery that's described in Count One of this

12   indictment.  And that was in violation of Title 18 United

13   States Code Section 924 (c) (1) (A) (ii).

14          If this case were to proceed to trial, the

15   government would expect the evidence to show that on June 5,

16   2006, the defendant attempted to take and obtain property

17   that belonged to Suns Supermarket, which is located at 1990

18   Perkerson Road here in the Atlanta area.

19          That business was engaged in a business that

20   affected interstate commerce in that it was a grocery

21   store.  It was just your typical grocery store like a Publix

22   or a Piggly Wiggly, a large chain, and at each register lane,

23   they accepted credit cards.

24          And that credit card would, when it was swiped, it

25   would transmit information to a place in Delaware, and

1   ultimately the money that was debited from the credit card or

2   the debit cards would go from a bank outside the state of

3   Georgia and then would be deposited into the bank that was

4   used by Suns Supermarket.

5           Your Honor, on that date the defendant came in, at

6   the time it was a family business, and it was owned by

7   Mr. and Mrs. Ah, A-h.  And they are a Korean couple whose

8   children also worked in the grocery store who were I would

9   approximate college age.  And all four of those individuals

10  would be available to testify.  Also present in the store

11  were two additional cashiers that were employed at this

12  grocery store.

13          There is video on a DVD from surveillance cameras

14  within the store.  We would produce that video for the jury

15  to observe in this case.

16          And the video would reveal that this defendant came

17  into the store, he approached what often is a customer

18  service counter, which is also a register, but they have

19  cigarettes and those types of things behind the counter for

20  sale.

21          And he spoke with Mrs. Ah, and asked for a couple

22  of items.  She brought the items back over, as if she were

23  going to check the defendant out.

24          And that's when he produced a handgun from

25  underneath his shirt and indicated to her that he wanted all

1   the money out of her register.

2          At that time, she backed away from him and was very

3   alarmed.  The defendant turned around and then walked towards

4   two other cashiers, pointing the gun, demanding money.  And

5   the defendant, the last person he encountered at a cash

6   register was Mr. Ah, the son of Mrs. Ah.

7          At that time it was obvious that the defendant was

8   not getting any money.  He started to flee.  When he started

9   to flee, Mrs. Ah had come from behind the customer service

10  counter and encountered the defendant, and a struggle

11  unsued.

12         Mrs. Ah and her son tried to subdue the defendant

13  while the police were called.  There was more of a physical

14  struggle.  Mr. Ah, the father, came from the back of the

15  store and helped subdue the defendant, and they held onto the

16  defendant until the police arrived.

17         And when the police arrived, Mrs. Ah turned over

18  the handgun that the defendant had on his person as well as

19  the defendant himself, and he was arrested by the Atlanta

20  Police Department.

21         THE COURT:  Did they wrestle the gun away from him

22  at some point or was he holding onto the gun?

23         MS. JORDAN:  I believe the defendant dropped the

24  gun during the struggle with the son and the mother, and the

25  defendant -- we would have the gun to produce to the jury at

1   trial, and it was a Fabrica de Arms Garantizadas, a .32-20

2   caliber revolver bearing Serial No. 51442.

3           And we would have testimony from an ATF expert who

4   would testify that it is in fact a firearm and that it was as

5   defined under the statute.

6           And the government would have business records to

7   prove the interstate nexus for the business affecting

8   interstate commerce.  We would have the audio -- I'm sorry,

9   the videotape from the attempted robbery itself where the

10  defendant had the gun, and we would have the testimony of

11  these witnesses that were there, if this case were to proceed

12  to trial.

13          THE COURT:  All right.  Mr. Watkins, before we talk

14  about all of that, let me ask you first, have you discussed

15  with your attorney the charge that you are pleading guilty

16  to?

17          THE DEFENDANT:  Yes, ma'am.

18          THE COURT:  Do you understand what the government

19  is saying that you did?

20          THE DEFENDANT:  Yes, ma'am.

21          THE COURT:  Have you had time to talk to your

22  attorney about your decision to plead guilty?

23          THE DEFENDANT:  Yes, ma'am.

24          THE COURT:  Are you satisfied so far with the help

25  and the advice she's been able to offer to you?

1          THE DEFENDANT:  Yes.

2          THE COURT:  All right.  Let's talk now about the

3    charge you are pleading guilty to, which is Count Two:  On or

4    about June 5, 2006, in this district, Atlanta, that you

5    knowingly used, brandished or carried a firearm during and in

6    relation to a crime of violence, and that would be in

7    violation of federal law.

8          Before we talk about all the elements of the

9    charge, let me just ask you generally, did the prosecutor

10   describe accurately what happened, or is there any correction

11   you would want to make to that?

12         THE DEFENDANT:  She did, yes.  It's correct.

13         THE COURT:  So on the day that is charged here, you

14   went into this grocery store that was owned by these Korean

15   folks; is that correct?

16         THE DEFENDANT:  Yes.

17         THE COURT:  And she said that after you at first

18   pretended to be interested in buying something, you pulled a

19   gun and asked for money; is that right?

20         THE DEFENDANT:  Yes.

21         THE COURT:  And then this struggle ensued and you

22   eventually got arrested?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Everybody is lucky that nobody got

25   shot, but nobody got hurt; is that correct?

1           THE DEFENDANT:  Yes.

2           THE COURT:  All right.  Now, the elements of the

3    offense are, first, that you have to use, brandish or carry a

4    firearm.  And certainly you had a gun, is that correct, and

5    you were carrying it and you had it and you showed it?

6           THE DEFENDANT:  Yes.

7           THE COURT:  So that would meet that element.

8           Also they would have to show that you brandished or

9    carried a firearm in connection with a crime of violence that

10   you could be prosecuted for in a federal court.

11          And that is the armed robbery itself; that is, a

12   robbery is a crime of violence, and I gathered the armed

13   robbery could be prosecuted in a court of the United States

14   because it would be a Hobbs Act?

15          MS. JORDAN:  Yes, Your Honor, it had an effect on

16   interstate commerce.

17          THE COURT:  All right.  So it appears that those

18   elements are met.

19          Do you have any concern about the factual basis,

20   Ms. Johnson?

21          MS. JOHNSON:  I do not.

22          THE COURT:  All right.  I find that there is a

23   factual basis.

24          Has anybody threatened or forced you to plead

25   guilty, Mr. Watkins?

```
 1              THE DEFENDANT:  No.

 2              THE COURT:  Are you pleading guilty freely and

 3    voluntarily?

 4              THE DEFENDANT:  Yes.

 5              THE COURT:  Plea agreements are permissible.  The

 6    only requirement is that I be told what the promises are

 7    between you and the government.  In other words, the plea

 8    agreement is where you promise to do something like plea or

 9    whatever else you promise, the government promises to do

10    something else like make a recommendation or there may be a

11    sentencing recommendation.  We will go over all what it is in

12    a minute.

13         But whatever it is, I just need to be told today

14    what the promises are.  Because the only way I can ensure

15    people live up to whatever they promise to you is if I know

16    today.  So it's important that that be told to me.

17         And that task is made easier by the fact that it's

18    all been written down somewhere and there is a written

19    negotiated plea.

20         Did you go over this plea agreement with your

21    attorney before today?

22              THE DEFENDANT:  Yes, ma'am.  Yes.

23              THE COURT:  Do you understand what is in there?

24              THE DEFENDANT:  Yes.

25              THE COURT:  All right.  Has anybody promised you
```

1    anything beyond what is in this piece of paper?

2              THE DEFENDANT:  No, ma'am.

3              THE COURT:  Ms. Johnson, do you have any reason to

4    believe that he might think there is any other promise out

5    there?

6              MS. JOHNSON:  No, Your Honor.

7              THE COURT:  All right.  We will -- let me ask at

8    this time if the prosecutor then, Ms. Jordan, to go over the

9    plea agreement with us, the important parts.

10             MS. JORDAN:  Okay.  Your Honor, the first portion

11   of the plea agreement that begins on page one and it's

12   numbered as Paragraph 2 states the elements and that the

13   defendant acknowledges that he is in fact guilty of the

14   offense that he's pleading guilty to.

15             Paragraph 3 states that the defendant has waived

16   his right to appeal except for in two instances.  One, if

17   there is an upward departure from the otherwise applicable

18   advisory sentencing guideline range.  Or secondly, if the

19   government files an appeal, the defendant has the right to

20   appeal at that time.

21             Paragraph 4 states that the defendant agrees to

22   cooperate truthfully and completely with the government, and

23   that includes being debriefed or providing truthful testimony

24   at any proceeding resulting from or related to his

25   cooperation.

1          Paragraph 5 states that the government agrees that

2    any self-incriminating information that defendant may provide

3    that we did not otherwise know about, that will not be used

4    to either enhance his sentence in this case or bring

5    additional charges against him, except for in the event that

6    he relates to the government his participation in any violent

7    criminal activity, he does not have 1B 1.8 protection for

8    that.

9          Paragraph 6 states that the defendant agrees to

10   make the defendant's cooperation known to the Court, and that

11   if -- in addition to the cooperation, if that is completed

12   prior to sentencing and it rises to the level of substantial

13   assistance, the government would file a motion with the Court

14   by way of a 5K motion.

15         If the cooperation is complete after the Court

16   imposes sentence, and again as long as it rises to the level

17   of substantial assistance, the government would make that

18   known to the Court and file a Rule 35 motion.

19         That paragraph also states and the parties agree

20   that it's up to the government to evaluate whether or not the

21   information, the cooperation he's given rises to the level of

22   substantial assistance.

23         Paragraph 7 outlines the maximum penalties and any

24   mandatory minimum penalties in this case.  There is a maximum

25   term of imprisonment of life with respect to Count Two.

 1    There is a mandatory term of imprisonment of 25 years, and

 2    that's because he has a prior 924 (c) conviction in this

 3    district previously.  There is --

 4            THE COURT:  So when that happens, 25 years is the

 5    mandatory minimum?

 6            MS. JORDAN:  Yes, Your Honor.  And that's a

 7    statutory minimum.

 8            THE COURT:  All right.

 9            MS. JORDAN:  The maximum term of supervised release

10    is five years.  The maximum fine is $250,000, and there is a

11    mandatory special assessment of $100.

12            Paragraph 8 states that the defendant understands

13    that before imposing sentence, the Court will be required to

14    consider the United States Sentencing Guidelines.  However,

15    it's ultimately within the Court's discretion to impose a

16    sentence up to and including the statutory maximum.

17            And the defendant also understands that no one can

18    predict his sentence at this time, and any recommendations we

19    have made that are in this plea agreement are simply that,

20    recommendations, and it's up to the Court to make a final

21    decision.

22            Paragraph 9 states that the government will

23    recommend that the defendant receive a two-level adjustment

24    for acceptance of responsibility.  And the government will

25    not be required to recommend this two-level adjustment of

1    acceptance of responsibility if after entering this plea

2    agreement, basically from today forward, if he engages in

3    conduct that is inconsistent with acceptance of

4    responsibility.

5            So if he should falsely deny or falsely attempt to

6    minimize his involvement or give conflicting statements about

7    his involvement or engage in new criminal conduct, the

8    government would not be required to recommend those two

9    points for acceptance.

10           Paragraph 10 states that the parties estimate

11   pursuant to the United States Sentencing Guidelines the

12   defendant's applicable guideline range is 292 to 365 months.

13           THE COURT:  That's calculated including acceptance

14   of responsibility; correct?

15           MS. JORDAN:  Yes, Your Honor.

16           Paragraph 11 states that the government will

17   recommend, within the guideline range, of 360 months of

18   imprisonment to be imposed in this case, and the only way we

19   would do a recommendation less than that is if he

20   accomplishes substantial assistance prior to sentencing and

21   we were to file a 5K motion.  Otherwise the government is

22   going to recommend a 360-month sentence.

23           And that's basically what Paragraph 12

24   says.  Should the defendant's cooperation qualify as

25   substantial assistance, the government will consider whether

1    to file a motion.  And if so, then the government will make a

2    recommendation different than what I have represented to the

3    Court today about 360 months.

4         In Paragraph 13 it states the defendant understands

5    that the Court will order him to pay a special assessment of

6    $100.

7         Paragraph 14 states that upon sentencing of the

8    defendant and with leave of Court, the government will move

9    to dismiss Counts One and Three of the indictment.  However,

10   the Court may still consider the underlying conduct of the

11   dismissed counts in determining his relevant conduct for the

12   purposes of his Sentencing Guidelines calculations.

13        Paragraph 15 states that the government reserves

14   the right to inform the Court and the probation office of all

15   facts and circumstances regarding the defendant and this

16   case, and to respond to any questions from the Court and the

17   probation office.

18        Paragraph 16 states that if the defendant fails in

19   any way to fulfill each one of his obligations under this

20   plea agreement, the government may elect to be released from

21   its commitments under the plea agreement, and we may then

22   prosecute him for any and all federal crimes that he has

23   committed that's related to this case including charges that

24   we have agreed to dismiss.

25        Paragraph 17 states that the defendant understands

1   and agrees that the recommendations of the government

2   incorporated within this plea agreement or otherwise

3   discussed between the parties are not binding on the Court,

4   and should the Court choose not to follow one of the

5   recommendations that the government has agreed to make, that

6   is not a basis upon which he could withdraw his guilty

7   plea.

8          And then finally, Paragraph 18 states that there

9   are no other agreements, promises or representations or

10  understandings between the defendant and the government other

11  than those that have been set forth in this written agreement

12  today.

13         THE COURT:  All right.  Again, let me ask you,

14  Mr. Watkins, any promises other than what's just been read

15  out by the prosecutor?

16         THE DEFENDANT:  No, ma'am.

17         THE COURT:  All right.  Let me tell you first what

18  the maximum and minimum penalties are before we talk about

19  the plea agreement.

20         The maximum penalty in this case is life

21  imprisonment.  That's self-explanatory.  It does not mean

22  that I would give you life imprisonment, but it means I have

23  the ability to impose that sentence if the facts and evidence

24  warranted it.

25         There is a mandatory minimum term of 25 years I'm

1  told.  That means that I have to give you at least 25 years

2  in prison absent some exception.  We will talk about

3  exceptions when we talk about the plea agreement.

4        There is also a five-year term of supervised

5  release.  And that means that when you are released from

6  prison, you are on supervised release for five years.  If you

7  violate any rules or laws during that five-year period of

8  time, you could be brought back to court and you would have a

9  hearing, but it wouldn't be in front of a jury.  It would be

10  a lower standard of proof in front of a judge and a

11  determination will be made whether to revoke you.  It's sort

12  of like parole.  And if so, you could go back to jail for

13  another five years in addition to whatever other prosecution

14  you might have for whatever you have done.

15        There is a fine provision of up to $250,000.  I

16  have a lot of discretion about whether to make you pay a

17  fine.

18        I don't have discretion about the special

19  assessment.  That's $100, and it's due at sentencing.

20        And those are the maximum and minimum terms of

21  imprisonment.

22        Now, as to the plea agreement, let's talk about

23  that.

24        The government is going to dismiss the other two

25  counts at sentencing, meaning then you will be convicted on

1    this one count you have pled to.

2            You are -- well, let me back up a little bit.

3            Two things are going on in connection with your

4    sentence.  We look at statutory mandatory minimums and we

5    look at the guidelines.

6            Now, the statutory mandatory minimum means that I

7    have to impose at least 25 years on you, absent some

8    exception.  But that doesn't necessarily mean that's your

9    whole sentence.

10           Then the next thing the Court has to do, it goes to

11   the guidelines.  And the guidelines then tells me what a

12   range is.  And according to Ms. Jordan, your range would be

13   292 to 365 I believe you said.  Is that correct.  292 months?

14           MS. JORDAN:  292 to 365, that's correct,

15   Your Honor.

16           THE COURT:  That's your guidelines range, and part

17   of that sentence is of course above 25 years.  That's the

18   guidelines range.

19           And I calculate the guidelines.  It's pretty easy

20   to do in a case like this, but I calculate it, add in

21   whatever numbers have to be added in.  I don't absolutely

22   have to impose a guideline sentence; the guidelines are

23   advisory.  But I'm supposed to consider them, and if I don't

24   go along with them, I have to explain why.  I have done that

25   for the Eleventh Circuit, whether it's up or down.

1          But whatever the guidelines calculation is, there

2     is the mandatory minimum, and then ultimately -- this is all

3     confusing, I know -- ultimately I am expected to impose what

4     is a reasonable sentence.

5          So two things you have got to know.  You are

6     looking at at least 25 years after an exception, and you are

7     probably looking at more in terms of some other things that

8     are going on with the plea agreement and the guidelines.  But

9     ultimately my sentence must be reasonable within those

10    parameters.

11         All right.  So let's talk about the plea

12    agreement.  Maybe that will make it all sound a little

13    clearer, because I don't think it's as hard as I made it

14    sound.

15         The government is, in addition to dismissing these

16    counts, going to recommend that you get the maximum

17    adjustment for acceptance of responsibility.  That's three

18    points.  That's helpful, it lowers your score a little.

19         Is that correct?

20         MS. JORDAN:  No, Your Honor, we agreed to recommend

21    two points for acceptance.

22         THE COURT:  Why not three?

23         MS. JORDAN:  Part of it was because of the charge

24    bargain, and that arrived at the particular sentence that we

25    wanted to recommend.

1          And also because it was so close to the time of

2     trial, the government had already gotten prepared for

3     trial.  So that's why we have agreed on the two points for

4     acceptance of responsibility.

5          MS. JOHNSON:  And, Your Honor, I would have to

6     clarify the record to say that my client had been offering to

7     plead for -- at least since December, January.  I have

8     written to the government.

9          They do not want to recommend the third point

10    because they want to ask for a sentence of 30 years.

11         THE COURT:  I see.

12         MS. JOHNSON:  And also in the plea agreement, one

13    of the terms is that I am not allowed to ask for anything

14    less than 30 years.

15         THE COURT:  All right.  Well, I thought it would

16    get simpler, but maybe it didn't.

17         The government is recommending only two points, not

18    three points.  The Court still has the ability to impose what

19    it believes to be appropriate.  However, you are agreeing not

20    really to ask for more than two or to ask for less than 30,

21    so you wouldn't be in a position to make that recommendation

22    or request.

23         The second part of this, besides the acceptance of

24    responsibility, is that you are I gather hopeful that you can

25    cooperate with the government and you are hopeful that that

1   will be substantial enough that they will file a 5K motion

2   for you.

3          Now, I can tell you are nodding and that you have

4   talked with your attorney about how this works.  Is that

5   correct?

6          THE DEFENDANT:  Yes, ma'am.

7          THE COURT:  If you can provide them enough

8   information that they believe to really be helpful in helping

9   them apprehend, indict, convict some other person, then they

10  can recommend that I go below the mandatory -- that's one of

11  the exceptions I'm talking about -- they can recommend that

12  I lower your sentence.  I don't think they are going to

13  recommend that I lower it below the mandatory minimum, but

14  they can make whatever recommendation they want if you

15  assisted them enough.

16         But it's totally up to the government whether to

17  make that motion, and there is nothing that I can do or your

18  attorney can do to make them make that motion.  It's their

19  decision.  So if they don't make the motion, there is no real

20  review of that.

21         Now, I am a little curious.  This kind of offense

22  doesn't seem like substantial assistance territory.  What

23  kinds of things are we talking about?  Other things he knows

24  about in the community?

25         MS. JORDAN:  Yes, Your Honor.

1          THE COURT:  All right.  And has he begun debriefing

2    at this point?

3          MS. JOHNSON:  We had a three-hour debriefing today,

4    Your Honor.

5          THE COURT:  All right.  So they are not committing

6    to anything.  Of course, it's in your interest to do the best

7    you can to provide them with information.

8          Now, according to this, you all are estimating that

9    the guidelines, advisory guidelines are at 292 to 365

10   months.  292, is that about 25 years, close to, to do the

11   math?  24 -- about 24 years, okay.  So that's about 24 years

12   to 30 years, give or take a few months.  So that's where they

13   think the advisory range will be.

14         The government is going to recommend if you don't

15   have enough assistance for them to make this motion, then

16   they are going to recommend that I sentence you to 30 years

17   imprisonment, and you and your attorney are agreeing that

18   that would be a reasonable sentence and you wouldn't ask for

19   lower.

20         But if your cooperation is substantial, your

21   sentence could be lower than 30 years, and the government

22   would file a motion in that instance.

23         Is that correct, Ms. Jordan?

24         MS. JORDAN:  Yes.

25         And I would also just point out to the Court that

1    should we file a Rule 35 or a 5K motion, at that point the

2    defense has the opportunity to make a recommendation if they

3    don't agree with what the government recommends as a sentence

4    reduction, so they would be permitted to make that argument

5    then.

6              THE COURT:  Okay.  So if you get that motion,

7    that's a real helpful thing to get.  Then you are free to ask

8    for less than 30 years.  But otherwise they will be asking

9    for 30, and under the agreement you can't ask for less than

10   that sentence.

11             Do you understand all that, Mr. Watkins?

12             THE DEFENDANT:  Yes.

13             THE COURT:  All right.  And Ms. Johnson, do you

14   envision there will be more debriefings and things to come?

15             MS. JOHNSON:  Yes.

16             THE COURT:  All right.  And finally the waiver of

17   appeal.  Under the law you have the right to appeal your

18   sentence if you think that I have made a mistake on the

19   guidelines or you think that I have imposed what would not be

20   a reasonable sentence.

21             But just as you can give up your right to a trial

22   and plead guilty, you can give up your right to appeal if

23   that's what you and your attorney thinks makes sense under

24   the circumstances.

25             And you have agreed to waive your appeal of the

1   conviction, sentence, and your right to attack it at any

2   point in the future, in a habeas or a 2255, anything like

3   that, except that you could file an appeal of any sentence

4   that was higher than the otherwise applicable guideline

5   range.  If it's higher than that, you can appeal.  Otherwise

6   my sentence will be the final word.  Do you understand that?

7              THE DEFENDANT:  Yes, ma'am.

8              THE COURT:  And of course, if the government

9   appeals, then all bets are off and you get to appeal as well.

10              So that's the plea agreement.  Do you have any

11   questions you want to ask me about that, Mr. Watkins?

12              THE DEFENDANT:  No, ma'am.

13              THE COURT:  All right.  I have told you enough

14   information I believe about the guidelines and *Booker*.  Let's

15   move on to -- has anybody promised you that you would receive

16   a certain sentence?

17              THE DEFENDANT:  No, ma'am.

18              THE COURT:  And as Ms. Jordan said, if I impose a

19   sentence that is not the sentence you like, you don't get to

20   withdraw your plea or appeal or anything like that.  Do you

21   understand?

22              THE DEFENDANT:  Yes.

23              THE COURT:  All right.  There is no parole in the

24   federal system, so any sentence you get will be the sentence

25   that you serve except for the good time credit.  You do get

1    54 days a year good time, which I believe translates to a

2    little over every six years you get a year off.  Six and a

3    half, something like that.  But other than that there is no

4    parole.

5           Is there anything about what I have asked you,

6    Mr. Watkins, that you would like to talk with me about or ask

7    before we finish up today?

8           THE DEFENDANT:  No, ma'am.

9           THE COURT:  All right.  Ms. Johnson, do you know of

10   any reason why the plea should not be accepted?

11          MS. JOHNSON:  No, Your Honor.

12          THE COURT:  All right.  I will accept the plea.

13          And Ms. Bates will tell you what the sentencing

14   date is.

15          THE CLERK:  Thursday, October 11th, at 3:30.

16          THE COURT:  All right.  We will see you all at that

17   time.  Thank you.

18               (Proceedings adjourn at 4:08 p.m.)

19

20

21

22

23

24

25

```
 1                    C E R T I F I C A T E

 2

 3   UNITED STATES OF AMERICA        :
                                     :
 4   NORTHERN DISTRICT OF GEORGIA    :

 5

 6              I, Nicholas A. Marrone, RMR, CRR, Official Court

 7   Reporter of the United States District Court for the Northern

     District of Georgia, do hereby certify that the foregoing 30
 8
     pages constitute a true transcript of proceedings had before
 9
     the said Court, held in the city of Atlanta, Georgia, in the
10
     matter therein stated.
11
                In testimony whereof, I hereunto set my hand on
12
     this, the 21st day of July, 2009.
13

14

15

16
                         /s/ Nicholas A. Marrone
17
                         _____
18
                         NICHOLAS A. MARRONE, RMR, CRR
19                       Registered Merit Reporter
                         Certified Realtime Reporter
20                       Official Court Reporter
                         Northern District of Georgia
21

22

23

24

25
```